IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT S. WALDMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TROOPER BRADFORD, et al. | : | NO. 02-4091 |

## OPINION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE   February 26, 2003

  On January 9, 2003, the Court held oral argument on Defendants' Motion for Summary Judgment. After hearing argument from both sides, the Court granted the Defendants' Motion, finding that Troopers Tyrone Bradford and Keith Everett were entitled to sovereign immunity on Plaintiff's state law claims and qualified immunity on the civil rights claims. At the conclusion of the hearing, we explained our reasons for the decision and entered judgment in favor of the Defendants on all counts. We now take the opportunity to memorialize that which was explained in open court.

### I. Facts

  At approximately 11:00 p.m., on April 28, 2001, while Mr. Waldman, his wife, and a few friends were returning from dinner in the Society Hill section of Philadelphia, the vehicle driven by Mr. Waldman was rear-ended by another on the Schuylkill Expressway. Mr. Waldman maintained control of his car and pulled to the side of the road. The other vehicle crashed into the retaining wall. As a result, there was a substantial distance between the final location of the two vehicles. A passenger in Mr. Waldman's car phoned the police to report the accident. After police arrived on the scene and were attending to the other vehicle, Mr. Waldman

phoned the police to alert them to the fact that he had also been involved in the accident. After waiting several minutes, Mr. Waldman left the area of his car and approached the other vehicle.

Trooper Bradford testified that he first saw Mr. Waldman as he was approaching the crash site. (Bradford Deposition, 21). As he approached, Mr. Waldman stated, "Officer, we were also involved in the accident." (Waldman Deposition, 19). Because Trooper Bradford smelled alcohol on Mr. Waldman's breath, he asked him to perform a field sobriety test. (Waldman Deposition, 19-22). Bradford had Waldman perform the one-legged stand, during which Bradford told Waldman he wobbled. (Waldman Deposition, 29). Bradford then had Waldman perform the heal-toe walk, which Bradford claims Waldman failed. (Bradford Deposition, at 24).

At that point, Bradford placed Waldman under arrest for driving under the influence, ("DUI"). Waldman was handcuffed and placed in the patrol car. After stopping at Waldman's car to obtain information pertinent to the accident, Bradford and Everett drove Waldman to the Bridgeport Fast Track Facility, where breathalyzer tests are administered by Montgomery County Sheriff's deputies. After performing the breathalyzer test on Waldman, Corporal Thomas McDonald determined that Waldman's blood alcohol content, ("BAC"), was .021%, well under the legal limit.

Waldman requested to call his wife to have her come and pick him up. (Waldman Deposition, at 34). The officers declined his request, handcuffed him again, and drove Waldman to the State Police Belmont Barracks to photograph and fingerprint Waldman and complete the paperwork reflecting an arrest. (Bradford Deposition, at 41). Waldman was released from the Belmont Barracks to his wife at approximately 2:15 a.m. (Waldman Deposition, at 36).

As a result of these incidents, Mr. Waldman filed this federal suit, alleging violations of his civil rights and state claims of false arrest, false imprisonment, assault, battery, and intentional infliction of emotional distress.

## II.  Legal Standard

When a defendant asserts a qualified immunity defense in a motion for summary judgment, the district court must first determine whether the plaintiff has properly asserted a deprivation of a constitutional right.  If so, the court must then determine if the right was clearly established at the time of the alleged violation.  Schieber v. City of Philadelphia, _ F.3d _, 2003 WL 360961 *5 (3d Cir. Feb. 20, 2003).  In order to be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Atkinson v. Taylor, 316 F.3d 257, 261 (3d Cir. 2003)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

## III.  Discussion

As we stated at the oral argument, we believe the case can be broken into three distinct parts: (1) the field sobriety test; (2) the arrest; and (3) the time Mr. Waldman remained in custody after the breathalyzer test results.

### A.  The Field Sobriety Test

With regard to the administration of the field sobriety test, we believe that the Plaintiff cannot establish the violation of any constitutional right.  The Plaintiff argues that, at the time Trooper Bradford administered the field sobriety tests, he had no knowledge that Mr. Waldman was the driver of the other vehicle.  Without knowledge that Mr. Waldman was the

3

driver of the other vehicle, argues the Plaintiff, there was no probable cause to believe that he was driving under the influence. Hence, Mr. Waldman's constitutional rights were violated.

Probable cause exists when "the facts and circumstances within the defendant's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had violated the law." Merkle v. Upper Dublin High School, 211 F.3d 782, 789 (3d Cir. 2000). Pennsylvania law provides that,

> A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
> (1) while under the influence of alcohol to a degree which renders the person incapable of safe driving; . . .
> (4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater . . . .

75 Pa.C.S.A. § 3731.

Here, Officer Bradford was faced with a man approaching the crash scene, saying, "we were involved in this accident, too." (Waldman Deposition, at 19).[1] Bradford testified that he smelled alcohol on Waldman's breath and Waldman testified that he had 2 or 3 glasses of wine with dinner. (Waldman Deposition, at 4).

Under these circumstances we believe that Bradford had probable cause to administer the field sobriety test. See Commonwealth v. McMullen, 756 A.2d 58, 61 (Pa.Super. 2000). ("[o]bjective criteria such as glassy eyes, slurred speech, or alcoholic odors serve as the basis for requesting a field sobriety test"). It was reasonable for Bradford to conclude that the person who approached him as the speaker for the other car involved in the accident was, in fact,

---

[1] There is some dispute over whether Mr. Waldman said "we" were involved in the accident or "I" was involved in the accident. (Waldman Deposition, at 19; Bradford Deposition, at 22).

the driver. Trooper Bradford and Rochelle Waldman both stated that there was a great distance between the crash site and Mr. Waldman's car. Hence, at the time Mr. Waldman arrived at the crash site, Trooper Bradford had no way of knowing that anyone else was even in the car with Mr. Waldman. Having smelled alcohol on Mr. Waldman's breath, we believe probable cause existed to perform the field sobriety tests. Hence, no violation of Mr. Waldman's constitutional rights occurred.

### B.  The Arrest

Similarly, we conclude that Mr. Waldman's arrest violated no constitutional rights. Trooper Bradford testified that Mr. Waldman failed both the one-legged stand and the heal-toe walk. (Bradford Deposition, at 24). The Plaintiff conceded his failure of the sobriety tests for purposes of summary judgment. Moreover, in his deposition, Mr. Waldman stated that Trooper Bradford told him he wobbled during the one-legged stand. Mr. Waldman responded that he was a klutz. (Waldman Deposition, at 29). In his deposition, Mr. Waldman also stated that he did not do the heal-toe walk properly. (Waldman Deposition, at 29). Considering his concession that he failed the field sobriety tests, and our prior determination that Trooper Bradford reasonably concluded that Waldman was the driver, there was probable cause for Waldman's arrest. Hence, Waldman has failed to establish a constitutional violation.

### C.  Post-Breathalyzer Detention

The third component of Mr. Waldman's detention is the most troubling. Once his BAC was established to be .02, the Plaintiff argues that his continued detention violated his

constitutional rights. We agree. Pursuant to Pennsylvania law, a BAC of .05% or less in the circumstances presented here results in a finding that the person was not under the influence.

> If chemical testing of a person's breath, blood or urine shows:
>
> (1) That the amount of alcohol by weight in the blood of the person tested is 0.05% or less, it shall be presumed that the person tested was not under the influence of alcohol and the person shall not be charged with any violation under section 3731(a)(1), (4), or (5) . . . or, if the person was so charged prior to the test, the charge shall be void ab initio.

75 Pa.C.S.A. § 1547(d).

Here, Trooper Bradford testified that the .021 and .023 BAC's resulted in insufficient evidence to proceed with prosecution. He noted in the arrest report that the charge was void ab initio. (Bradford Deposition, at 41). At that point, there was <u>no</u> probable cause to believe Mr. Waldman had committed the crime of DUI. Yet, after getting the results of the breathalyzer, Troopers Bradford and Everett proceeded to handcuff Mr. Waldman, place him in the patrol car, transport him to the Belmont Barracks, fingerprint and photograph him. (Waldman Deposition, 34-36). This further detention was unconstitutional.

However, that is not the end of this court's inquiry on the issue of qualified immunity. Having determined that Mr. Waldman's constitutional rights were violated, we must now determine if the right was clearly established. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001). With this in mind, we conclude that a reasonable officer, in the position of Troopers Bradford or Everett, would not realize that the

continued detention of Mr. Waldman to complete administrative paperwork would violate his rights.

From our earlier discussion of 75 Pa.C.S.A. § 1547(d), stating that a charge of DUI is void ab initio when the breathalyzer result is 0.05% or less, one might conclude that no reasonable officer would have continued to detain Mr. Waldman. However, the language of §1547(d) is not clear. The statute says that the "charge" is void. It does not address the arrest or what effect a BAC of 0.05% or less has on the arrest. Reasonable people could argue over the meaning of the statute section and how the statute affects an arrest, as was evidenced by the two lawyers in this case arguing over this language for the better part of an hour in my courtroom.

Moreover, the officers were also faced with a conflicting statute, requiring that any person arrested for a felony or misdemeanor must be fingerprinted within 48 hours of arrest. 18 Pa.C.S.A. § 9112(a). This statute is clear and unambiguous.

> **§ 9112. Mandatory fingerprinting**
> **(a) General rule**. - Fingerprints of all persons arrested for a felony [or] misdemeanor . . . shall be taken by the arresting authority, and within 48 hours of the arrest, shall be forwarded to, and in a manner and such a form as provided by, the central repository.

Considering the language of this statute and Trooper Bradford's statement that the fingerprinting was "something we have to do," (Waldman Deposition, at 35), the "booking" of anyone arrested was a matter of procedure.

The Supreme Court has held that, "[i]f the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." Saucier, at 121. Hence, Troopers Bradford and Everett faced a situation where one statute would seem to require Mr. Waldman's immediate release and the other his continued detention. When the situation is

considered "academically," the language of § 1547(d) causes confusion among those who possess legal degrees, let alone an officer attempting to follow state law. When considered "in reality," the officers followed a statutorily required procedure.

At the oral argument, I made my opinion clear. If the Commonwealth was seeking a determination on the constitutionality of its policy (to detain, photograph, and fingerprint a person, and complete the administrative paperwork necessary to memorialize an arrest) once a breathalyzer test comes back 0.05% or less, it is <u>not</u> constitutional. However, under the circumstances presented here, we believe the officers' mistake was reasonable and find that they are entitled to qualified immunity.[2]

As such, this Court previously entered summary judgment in favor of the Defendants on all claims.

BY THE COURT:

JACOB P. HART<br>UNITED STATES MAGISTRATE JUDGE

---

[2] We also note that the Troopers are entitled to immunity on the state law claims. It is settled Pennsylvania law that Commonwealth officials acting within the scope of their duties enjoy the same immunity as the Commonwealth, itself. <u>Litzenberger v. Vanim</u>, 2002 WL 180263 (E.D. Pa. Feb. 5, 2002)(citing <u>LaFankie v. Miklich</u>, 152 Pa.Cmwlth. 163, 618 A.2d 1145, 1148-49 (Pa.Commw.Ct. 1992).